WO                      NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| National Farmers Union Property & Casualty Company,<br><br>        Plaintiff,<br><br>v.<br><br>Ann Etten, *et al.*,<br><br>        Defendants. | No. CV-16-08211-PCT-JJT<br><br>**ORDER** |
|---|---|

At issue is Defendants Ann Etten and Erica Etten's Motion to Dismiss (Doc. 22, Mot.), to which Plaintiff National Farmers Union Property & Casualty Company filed a Response (Doc. 32, Resp.), and in support of which Defendants filed a Reply (Doc. 36, Reply). Defendants Gregory Robinson, Grace Robinson-Klonoski, and Erica F. Smith joined in Ann and Erica Etten's Motion (Docs. 30, 35) and Reply (Docs. 37, 38). The Court finds this matter appropriate for resolution without oral argument. *See* LRCiv 7.2(f).

**I.     BACKGROUND**

On July 1, 2015, Defendant Erica Etten was driving a Lincoln MKZ (the "MKZ") partially purchased and cosigned for by her mother, Defendant Ann Etten, and struck two cyclists, both of whom later died. The statutory beneficiaries and estates of the decedent cyclists (the "Wrongful Death Action Plaintiffs") filed a wrongful death action against Ann and Erica Etten in Mohave County Superior Court alleging negligence and negligence *per se*. *See Gregory Robinson, et al. v. Erica Etten, et al.*, Mohave County,

Case No. CV2015-07216. The Wrongful Death Action Plaintiffs allege that Ann Etten is vicariously liable for the collision by virtue of the Family Purpose Doctrine—an Arizona state law principle. The Wrongful Death Action remains pending with discovery ongoing.

The Wrongful Death Action Plaintiffs allege that Ann Etten provides substantial financial support and assistance to Erica Etten. While Ann Etten primarily resides in Dalton, Minnesota, Erica Etten has consistently resided in investment properties owned by her parents in Lake Havusa City, Arizona. Throughout this time, Ann Etten, as well as her husband, maintained two primary insurance policies covering their various vehicles, properties, and liabilities (the "Umbrella Policy" and "Farm Policy"). Simultaneously, Ann Etten maintained a separate insurance policy covering the MKZ (the "MKZ Policy").

After Erica Etten's accident occurred, the insurance company that issued and maintained the MKZ Policy agreed to defend and indemnify Ann and Erica Etten under the MKZ Policy. The attorneys defending Ann and Erica Etten under that policy have asserted that Ann Etten should not be held vicariously liable under the Family Purpose Doctrine.

On August 12, 2015 and September 11, 2015, Plaintiff denied coverage to the Ettens under the Umbrella and Farm Policies the family maintained asserting various exclusions and omissions. On July 11, 2016, counsel for the Wrongful Death Action Plaintiffs sent a demand letter to Plaintiff and Defendants to settle the claims. On July 28, 2016, personal counsel for Ann Etten tendered Ann Etten's defense and indemnity to Plaintiff under the Farm Policy. On August 30, 2016, Plaintiff reaffirmed its denial of coverage under the Farm Policy but agreed to provide a defense under the Umbrella Policy subject to a reservation of rights. On August 31, 2016, Plaintiff denied the Wrongful Death Action Plaintiffs' demand.

On September 8, 2016, appointed counsel for the Ettens under the MKZ Policy tendered the $500,000 bodily injury liability limits under the policy and tendered the Ettens' defense and indemnity to Plaintiff. The Ettens' counsel then reserved their rights

to stipulate to a judgment with the Wrongful Death Action Plaintiffs and assign any rights they may have under Ann Etten's insurance policies to them.

Plaintiff then filed this declaratory judgment action seeking relief under four counts: (1) Declaratory Judgment of No Liability Under the Family Purpose Doctrine; (2) Declaratory Judgment of No Coverage Under the Umbrella Policy; (3) Declaratory Judgment of No Coverage under the Farm Policy; and (4) Declaratory Judgment of No Reasonable Expectation of Coverage for Ann Etten Under the Umbrella and Farm Policies. (Doc. 17, Compl. ¶¶ 82-123.)

## II.  LEGAL STANDARD

Under the Declaratory Judgment Act, district courts have the "unique and substantial discretion" to decide whether to issue a declaratory judgment. *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). The Declaratory Judgment Act states that "courts *may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). Accordingly, a district court is under no compulsion to exercise jurisdiction. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942).

Where parallel state proceedings exist, "there is a presumption that the entire suit should be heard in state court." *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (citation omitted). In such situations, Courts should avoid gratuitous interference as it would be uneconomical and vexatious for a federal court to proceed with a declaratory judgment action in these situations. *Wilton*, 515 U.S. at 282–83 (citation omitted). However, the existence of a pendent state action does not automatically bar a request for federal declaratory relief. *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991). Courts consider several factors in determining whether to exercise jurisdiction or dismiss or stay the declaratory judgment proceeding. These factors include the need to: (1) avoid unnecessary determination of state law issues; (2) discourage litigants from filing declaratory actions in an attempt to forum shop; and (3) avoid duplicative litigation. *Dizol*, 133 F.3d at 1225; *Chamberlain*, 931

F.2d at 1367. In addition to the foregoing factors, the Ninth Circuit has adopted the following additional considerations:

> [W]hether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

*Dizol*, 133 F.3d at 1225 n.5 (citation omitted).

When declining to exercise jurisdiction, the district court is "authorized . . . to stay or dismiss" the action. *Wilton*, 515 U.S. at 288.

## III. ANALYSIS

While the Court is tasked with considering several factors in making its determination, the briefs focus on two primary points: (1) a presumption in favor of or against exercising jurisdiction, and (2) duplicative litigation and entanglement with state law issues.

### A. Presumption in Favor of or Against Review

At the outset, the parties present contravening arguments as to whether a presumption in favor of exercising jurisdiction exists. (Resp. at 5-7; Reply at 6-7.) Not only do Defendants assert that the applicable presumption does not apply, they contend that there is a presumption *against* exercising jurisdiction. (Mot. at 6-7.) Both parties provide ample precedent supporting their arguments,[1] but, at bottom, none of the case law is wholly analogous or controlling.

Plaintiff argues that, under *Dizol*, there is a general rule against declining to entertain a claim for declaratory relief and that district courts instead have "virtually

---

[1] Plaintiff and Defendants each list exhaustive string cites to multiple opinions from this District with divergent results. (Mot. at 9; Resp. at 12-13.) When courts' analysis is largely discretionary, such contradictory results are unsurprising and, indeed, expected.

- 4 -

unflagging obligation to exercise the jurisdiction given to them" in such circumstances. (Resp. at 7-8 (citing *Chamberlain*, 931 F.2d at 1366).) However, under *Dizol*, "the *Brillhart* factors remain the philosophic touchstone for the district court" and the district court "is in the best position to assess how judicial economy, comity and federalism are affected in a given case." 133 F.3d at 1225. Further, Plaintiff bases much of its argument on compulsory counterclaims that Defendants have purportedly threatened to bring—bad faith and breach of contract. (Resp. at 8.) Plaintiff is correct that such claims generally militate strongly against declining to exercise jurisdiction. *See Dizol*, 133 F.3d at 1225 ("when other claims are joined with an action for declaratory relief (*e.g.*, bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief"). However, Defendants have not asserted such claims. While undeniably frustrating—both to the Court and Plaintiff—were Defendants to raise these claims at the state level only for the action to be removed to federal court, Defendants correctly state that the Court can only analyze and rule based on the action before it. At present, Defendants have not asserted those claims and the Court is required to judge the matter based on its current composition, not how it might be positioned in the future.

Defendants, on the other hand, cite to a similar case from this District for the proposition that the Court should begin with a presumption against exercising jurisdiction. (Mot. at 6-7 (citing *Riverport Ins. Co. v. Horizon Human Servs., Inc.*, No. CV-15-00704, 2015 WL 7351670 (D. Ariz. Nov. 20, 2015).) Plaintiff provides little response regarding *Riverport*, and while the case is not precisely analogous or controlling. The Court nonetheless is persuaded by its reasoning.

Initially, the Court notes there is no general presumption in favor of declining jurisdiction. *Dizol*, 133 F.3d at 1225. However, in *Riverport*, the court found that although the party seeking a declaratory action was not a party to the underlying tort, the proceedings were "sufficiently parallel" to justify declining to exercise jurisdiction. *Id.* at *3. The court reasoned that both suits arose from the same set of facts and thus began its

analysis with a "presumption against exercising jurisdiction." *Id.* That reasoning applies equally here. While there are aspects of the declaratory action that are not currently at issue in the Wrongful Death Action—mainly those found in Counts II-IV concerning the language of the insurance policies—both actions nonetheless arise from the MKZ's collision with two cyclists. Further, the inquiry as to Ann Etten's vicarious liability *is* at issue in the Wrongful Death Action. Accordingly, this Court begins its analysis with a presumption against exercising jurisdiction in this case.

### B.     Duplicative Litigation and Entanglement

Defendants move to dismiss Plaintiff's action primarily because it is "entwined with the Wrongful Death Action in big ways and small." (Mot. at 4.) Specifically, Defendants argue that the determination of Ann Etten's vicarious liability, or lack thereof, is based solely on the Family Purpose Doctrine—which is purely Arizona state law. (Mot. at 4-5.) Defendants also argue that the remaining claims require the Court to compare facts of the Wrongful Death Action with the coverage afforded by the at-issue insurance policies and should be heard as part of the broader controversy in state court. (Mot. at 6-9.) For the reasons that follow, the Court agrees.

First and foremost, Count I of Plaintiff's declaratory action asks the Court to find that the Wrongful Death Action Plaintiffs, in the Wrongful Death Action itself, "cannot establish liability against Ann Etten under the Family Purpose Doctrine under Arizona law according to the Arizona Supreme Court . . . ." (Compl. ¶ 84.) This request alone requires the Court to examine Arizona law, make a determination under that law, and then—apparently—rule that the Wrongful Death Action Plaintiffs cannot establish a key point of liability in a state court action. On its face, the Complaint asks the Court to intrude on the Mohave County Superior Court proceedings. Moreover, the Court cannot make such a binding ruling on those proceedings—despite Plaintiff's request—leaving the Mohave County Superior Court free to make its own decision, which may be redundant or contradictory. *See Empire Fire & Marine Ins. Co. v. Bittermann-Halbreich*, No. CV-07-675-PCT-MHM, 2008 WL 4183075, at *3 (D. Ariz. Sept. 8, 2008) (noting

1 that duplicative insurance litigation at the state and federal level risks inconsistent judgments). The requested entanglement is both needless and duplicative. *See, e.g.*, *id.* (finding that "*any* determination of state law issues in this case is needless in light of the state court forum in which these legal issues can and will be resolved") (emphasis in original); *Riverport*, 2015 WL 7351670, *4 ("The mere possibility of duplicative litigation, however remote, weighs in favor of abstention.").

Second, the remaining counts—which do not similarly offend notions of duplication and entanglement—should still be determined in state court. In determining the coverage issues in Counts II-IV, the Court would need to compare the facts present in the underlying Wrongful Death Action with the coverage provided by the Farm and Umbrella policies. In declining to exercise jurisdiction, the Mohave County Superior Court may need to analyze those policies where they would not have previously been required to. However, that court will have familiarity with the Wrongful Death Action facts and how they affect the policies. Thus, while the coverage determinations under Minnesota law do not involve the identical state law issues, the state court remains better positioned to determine the insurance coverage matter in conjunction with the Wrongful Death Action.[2] This is particularly true where the instant action "involves insurance law, an area that Congress has expressly left to the states. . . ." *Continental Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371 (9th Cir.1991) (citing 15 U.S.C. §§ 1011-12). Moreover, where "the sole basis of jurisdiction is diversity of citizenship, the federal interest is at its nadir." *Id.*

### C.     Other Factors

The Court also finds that the remaining factors outlined in *Dizol* are neutral or weigh in favor of dismissal. *Dizol*, 133 F.3d at 1225 n.5. First, resolution of the federal action would not settle all aspects of the controversy and the underlying state action would remain. Second, the availability and convenience of other remedies do not counsel

---

[2] Plaintiff's disparagement of the merits of Defendants' reasonable expectations claim (Resp. at 6-7) and Defendants' justification of the same (Reply at 7-9) are irrelevant to the Court's current determination and are not weighed or analyzed here.

against dismissal. Indeed, underlining much of Plaintiff's Response is a singular false premise: that this Court is better suited to interpret Minnesota law than the Mohave County Superior Court. (Resp. at 7, 11.) In so arguing, Plaintiff avers that forcing the state court to interpret Minnesota law would preclude "satisfactory adjudication." (Resp. at 7.) It is accurate, as Plaintiff states, that federal district courts often hear cases involving diverse parties, but there is no maxim stating that this Court can better interpret the law of another state than its state counterpart.[3] Plaintiff's lack of citation to any precedent that directs otherwise is unsurprising. Third, while some clarification would be gained by resolution of this action, it is outweighed by concerns of "judicial administration, comity, and fairness to litigants." *Chamberlain*, 931 F.2d 1361.

Finally, though only briefly discussed by the parties, Plaintiff appears to be forum shopping. Not only does Plaintiff contend that its arguments cannot be "satisfactorily"—a term that Plaintiff uses subjectively to describe the possible result, rather than the availability of an outcome—adjudicated at the state level, it asserts that this Court is "well-versed in diversity matters involving interpretation of extra-jurisdictional insurance law." (Resp. at 12.) In other words, Plaintiff admits that both courts are capable of hearing its case, but prefers one over the other. This is forum shopping.

## IV.   CONCLUSION

The decision whether to retain jurisdiction is a "responsibility that district courts are duty-bound to take seriously." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997). The Court has done so and found that the reasons to decline to exercise jurisdiction are plentiful and convincing. Still, Plaintiff is not precluded from filing its declaratory action in Mohave County Superior Court. *See* A.R.S. § 12-1832. As

---

[3] Plaintiff quotes *Chamberlain* for the proposition that allowing the Mohave County Superior Court to interpret Minnesota law would cause "doubts and confusion to one inexpert in the law of that State." 931 F.2d at 1367. However, that quote recognizes the difficulty that "*federal district courts* would have in ruling on complex state law issues[.]" *Id.* (emphasis added). Accordingly, the apprehensions regarding courts' abilities to interpret the laws of other states are identical in the Mohave County Superior Court and the District of Arizona and allowing the current declaratory action to continue does nothing to allay those concerns.

Defendants point out, the Mohave County Superior Court could then combine the declaratory judgment action with the Wrongful Death Action, eliminating duplicative proceedings and facilitating the efficient administration of each. (Mot. at 7-8.)

**IT IS THEREFORE ORDERED** granting Defendants' Motion to Dismiss (Doc. 22).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment accordingly and close this action.

Dated this 25th day of January, 2017.

Honorable John J. Tuchi
United States District Judge